248 P.3d 1107 (2011)
In re the Matter of the ESTATE OF Audrey P. BLESSING, Deceased.
No. 29153-7-III.
Court of Appeals of Washington, Division 3.
March 24, 2011.
*1108 Steven W. Hughes, Ewing Anderson PS, Spokane, WA, for Appellant.
Jacke L. Blair, Attorney at Law, Spokane, WA, for Respondent.
BROWN, J.
¶ 1 The Estate of Audrey Blessing appeals the trial court's ruling that the children of Audrey's[1] deceased second husband were her "stepchildren" within the meaning of RCW 4.20.020 and entitled to participate in a wrongful death action brought by the estate. Audrey had survived her third husband and was unmarried at her death. Because the stepparent/stepchild relationship had legally ended before Audrey's death, the trial court erred. Accordingly, we reverse.

FACTS
¶ 2 Audrey was first married to Alvin Hendricks from 1949 until 1964, when they divorced. While married, the couple had three daughters, including Cynthia Hagensen. In December 1964, Audrey married her second husband, Carl Blaschka. Mr. Blaschka had four children from his previous marriage to Marion: John, Julie, Diana, and Carla. Three of the children were Marion's that Mr. Blaschka had adopted. Audrey and Mr. Blaschka raised their seven children together. Audrey did not adopt the Blaschka children.[2] No children were born to Audrey and Mr. Blaschka. Audrey and Mr. Blaschka were married until his death in 1994. After Mr. Blaschka's death, Audrey maintained a close relationship with the Blaschka children. In 2002, Audrey married her third husband, Robert Blessing. Mr. Blessing died in 2005. Audrey continued to remain close with the Blaschka children while married to Mr. Blessing and after his death.
¶ 3 Audrey remained unmarried and died in September 2007, allegedly as the result of an automobile collision. Audrey's will was filed in probate the next month and named Ms. Hagensen as personal representative. Audrey listed the Blaschka children as residuary beneficiaries of a portion of her estate. Ms. Hagensen made a wrongful death claim for the estate arising from the automobile collision. The parties in their briefing agree that funds derived from the wrongful death claim are not part of Audrey's estate.
¶ 4 In November 2009, the Blaschka children petitioned for a judicial determination that they were beneficiaries of the estate's wrongful death claim. Ms. Hagensen, as personal representative, then moved for judgment (1) declaring the Blaschka children are not "stepchildren" for the purposes of the wrongful death statute; (2) dismissing the Blaschka children's TEDRA[3] petition; and (3) awarding the estate attorney fees and costs. The Blaschka children moved for an order and judgment declaring them "stepchildren" of Audrey Blessing under the Washington wrongful death statute.
¶ 5 In June 2010 the court denied the estate's motion and declared the Blaschka children "stepchildren" of Audrey Blessing and beneficiaries in any wrongful death claim brought by her estate. The court denied reconsideration. The estate appealed.

ANALYSIS
¶ 6 The issue is whether the trial court erred in deciding children of a decedent's former husband are "stepchildren" and wrongful death beneficiaries under RCW 4.20.020. A wrongful death action is "for the *1109 benefit of the wife, husband, ... child or children, including stepchildren, of the person whose death shall have been so caused." RCW 4.20.020. The phrase "including stepchildren" was added in 1985. LAWS OF 1985, ch. 139, § 1. "Stepchildren" is not defined in the statute or in its legislative history.
¶ 7 Statutory interpretation is a question of law reviewed de novo. State v. Breazeale, 144 Wash.2d 829, 837, 31 P.3d 1155 (2001). When interpreting a statute, a court's fundamental objective is to ascertain and carry out the legislature's intent. State v. Jacobs, 154 Wash.2d 596, 600, 115 P.3d 281 (2005). "[I]f the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wash.2d 1, 9-10, 43 P.3d 4 (2002). The plain meaning of a statute is derived "from the ordinary meaning of the language at issue, as well as from the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." Jacobs, 154 Wash.2d at 600, 115 P.3d 281. When a statutory term is undefined, the court may look to a dictionary for its ordinary meaning. State v. Gonzalez, 168 Wash.2d 256, 263, 226 P.3d 131 (2010).
¶ 8 The dictionary defines stepchild as "a child of one's wife or husband by a former partner." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2237 (3d ed. 1993). Further, Black's Law Dictionary defines stepchild as "[t]he child of one's spouse by a previous marriage." BLACK'S LAW DICTIONARY 272 (9th ed. 2009). The estate argues the ordinary meaning of stepchildren solely includes children of a person with a husband, wife, or spouse. Therefore, once a marriage has ended, the "step" relationship also ends. Br. of Appellant at 12. Given the above definitions, we agree.
¶ 9 Our legislature has established similar definitional limits in other statutory areas. According to the support of dependent children statute found at RCW 74.20A.020(8): "`Stepparent' means the present spouse of the person who is either the mother, father, or adoptive parent of a dependent child, and such status shall exist until terminated as provided for in RCW 26.16.205." RCW 26.16.205 in turn provides that such status terminates upon the entry of a decree of dissolution, decree of legal separation, or death, or upon filing a decree of dissolution or separation if the stepparent so moves.
¶ 10 When the words in a statute are clear and unequivocal, we are required to assume the legislature meant exactly what it said and apply the statute as written. Ralph's Concrete Pumping, Inc. v. Concord Concrete Pumps, Inc., 154 Wash.App. 581, 591, 225 P.3d 1035, review granted, 169 Wash.2d 1029, 241 P.3d 786 (2010). We may not add words where the legislature has chosen to exclude them. State v. Delgado, 148 Wash.2d 723, 727, 63 P.3d 792 (2003). The court avoids reading the statute in ways that will lead to absurd or strange results. Lane v. Harborview Med. Ctr., 154 Wash.App. 279, 289, 227 P.3d 297 (2010).
¶ 11 The Blaschka children note the Supreme Court defined stepchild in 1950 in In re Estate of Bordeaux, 37 Wash.2d 561, 593, 225 P.2d 433 (1950), and argue the legislature is presumed to have accepted that definition when it added stepchildren to the wrongful death statute in 1985. In Bordeaux, the claimants were designated in the will of their father's widow and the question was how their inheritance should be taxed. Id. at 562, 225 P.2d 433. The court determined the children should be taxed at the same rate as they would have been had their father survived their stepmother. Id. at 593, 225 P.2d 433. The estate responds that Bordeaux is inapplicable partly because, there, the stepmother had not remarried. And, the estate points to In re Smith's Estate which indicated that Bordeaux was inapplicable because its classification for inheritance tax purposes had no bearing on whether a stepchild may inherit from his stepparent as an heir-at-law. In re Smith's Estate, 49 Wash.2d 229, 234, 299 P.2d 550 (1956). We agree with the estate. Given In re Smith's Estate, Bordeaux has no bearing here.
¶ 12 The legislature added the stepchildren language to the community property chapter in 1969, including the proviso that "[t]he obligation to support stepchildren shall cease upon the entry of a decree of dissolution, decree of legal separation, or death." LAWS *1110 OF 1969, Ex. Sess., ch. 207, § 1. The legislature defined stepparent in 1971 in support of the dependent children statute. Laws of 1971, Ex. Sess., ch. 164, § 2. Then the definition was "the present spouse of the person who is either the mother, father, or adopted parent of a dependent child, and such status shall exist and continue until the relationship is terminated by death or dissolution of marriage." See former RCW 74.20A.020(8). Thus, when the legislature added the phrase "including stepchildren" to the wrongful death statute in 1985, it intended the step-relationship to end at death. Laws of 1985, ch. 139, §§ 1, 2.
¶ 13 This court in Strickland v. Deaconess Hospital, 47 Wash.App. 262, 735 P.2d 74 (1987), held that children of a woman whose marriage to their stepfather was invalidated were not stepchildren under the newly amended wrongful death statute. Id. at 269, 735 P.2d 74. Strickland involved James and Robert Weaver who sued a hospital for outrage following the treatment of their stepfather, Mr. Strickland. Id. at 264, 735 P.2d 74. The court declared "`immediate family members' entitled to recover under a theory of outrage consists of those who are permitted to bring wrongful death actions." Id. at 268-69, 735 P.2d 74 (citation omitted). The Weavers had been raised by Mr. Strickland, but the marriage to their mother had been invalidated. Id. at 264, 735 P.2d 74. Mr. Strickland had never adopted the Weavers. Id. However, the Weavers maintained a close relationship with Mr. Strickland. See id. at 267, 735 P.2d 74. The court held the Weavers lacked standing to sue because they "were neither adopted nor actually stepchildren of Mr. Strickland." Id. at 269, 735 P.2d 74.
¶ 14 The Blaschka children argue Strickland is distinguishable because there, the Weavers' mother had never been legally married to Mr. Strickland, so they had never been stepchildren. They argue the step relationship solely requires a once valid marriage, not a current valid marriage. We disagree. Once a stepparent does not mean always a stepparent; once the critical relationship terminates, at best the non-biological parent is a former stepparent. If the Blaschka children's argument were to be followed for former stepchildren, then the same would follow for former divorced spouses, creating an absurd result. It follows that former stepchildren, like former spouses, are not statutory beneficiaries under the wrongful death statute.
¶ 15 In In Re Combs Estate, 257 Mich.App. 622, 623, 669 N.W.2d 313 (2003), the deceased's former stepchildren argued they were beneficiaries under Michigan's wrongful death statute. Michigan's wrongful death statute included as beneficiaries "children of the deceased's spouse." See id. at 314. The statute does not use the term "stepchildren." Id. The Blaschka children rely on the dissent in Combs which reasoned the statute was ambiguous. The majority in Combs held, "Applying the plain meaning of this provision to the facts of this case, we conclude that appellants are not the `children of the deceased's spouse' because the deceased, Ellen Combs, had no spouse at the time of her death. A `spouse' is a married person." Id. at 315. Additionally, the Combs court explicitly noted the deceased had been a widow for several years before her death.
¶ 16 In sum, in 1964, Audrey became the Blaschka children's stepmother when she married her second husband. Audrey was widowed by their father in 1994, remarried in 2002 for a third time, and then was widowed again in 2005; she was a single woman at her death. Though Audrey maintained a close and loving relationship with the Blaschka children and provided for them in her will, they were no longer her stepchildren at the time of her death. Therefore, the trial court erred in declaring the Blaschka children statutory beneficiaries under Washington's wrongful death statute. The estate prevails and is entitled to fees and costs under RCW 11.96A.150 and RAP 18.1.
¶ 17 Reversed.
WE CONCUR: KULIK, C.J., and KORSMO, J.
NOTES
[1] For clarity, Audrey Blessing's first name is used. No disrespect is intended.
[2] For clarity, the respondents are referred to collectively, though their surnames may currently differ. No disrespect is intended.
[3] The Washington Trust and Estate Dispute Resolution Act.