# Order

**Michigan Supreme Court**
**Lansing, Michigan**

April 17, 2017

151998

Stephen J. Markman,
Chief Justice

Robert P. Young, Jr.
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Joan L. Larsen,
Justices

*In re* Estate of CLIFFMAN

_____

PHILLIP CARTER, ELMER CARTER, DAVID
CARTER, and DOUG CARTER,
　　　　　Appellants,

v

RICHARD D. PERSINGER, Personal
Representative of the Estate of GORDON JOHN
CLIFFMAN, BETTY WOODWYK, and
VIRGINIA WILSON,
　　　　　Appellees.

SC: 151998
COA: 321174
Allegan Probate Ct:
　13-058358-DE

_____/

　　　　On December 8, 2016, the Court heard oral argument on the application for leave to appeal the June 9, 2015 judgment of the Court of Appeals. On order of the Court, the application is again considered, MCR 7.305(H)(1), and it is DENIED, there being no majority in favor of granting leave to appeal or taking other action.

　　　　YOUNG, J. (*dissenting*).

　　　　I respectfully dissent and write to explain why I would reverse the decision rendered by the Court of Appeals panel below.

　　　　The Wrongful Death Act (WDA) creates a cause of action for injury and death caused by neglect or wrongful act, and it defines the persons who may collect a share of the proceeds of the claim.[1] At issue in this case is whether children of a decedent's predeceased spouse, Betty Carter, are eligible to share in the proceeds of a WDA claim. The appellants in this matter are the stepsons of the decedent, Gordon Cliffman. They claim to be entitled to a share of the WDA proceeds because their mother, Betty Carter, had been married to Cliffman, on whose behalf a WDA lawsuit had been filed and settled. The Court of Appeals held that the term "spouse" in the statutory phrase "children of the deceased's spouse" referred only to an individual who was married at the time of injury or death. According to the Court of Appeals, Cliffman was not married at the time of his death because his wife had predeceased him, which terminated the marriage. I disagree with this conclusion. I would hold instead, on the basis of the plain language of the statutory text, that children of a predeceased spouse of the decedent may

---

[1] See generally MCL 600.2922.

recover a portion of the proceeds from a WDA claim. Therefore, I would reverse the judgment of the Court of Appeals, reverse the trial court's order granting appellees' petition, and remand for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

In 1976, Gordon Cliffman married Betty Carter. The two conceived no children together, but at the time they married, Betty had six biological children from a previous marriage. Cliffman never adopted these children, but he apparently raised them as his own. Betty died in 1996. Cliffman never remarried and fathered no biological children during his life.

On September 22, 2012, Cliffman was badly injured in an automobile accident, eventually succumbing to his injuries on October 2, 2012.[2] He died intestate. Cliffman's estate was opened in the Ottawa County Probate Court, and Phillip Carter, one of Betty's biological sons, was appointed the personal representative of Cliffman's estate.[3] After it was discovered that the estate had been opened in the wrong county,[4] the probate proceedings were transferred to the Allegan County Probate Court, the probate court for the county in which Cliffman actually resided.

As personal representative of the estate, Phillip negotiated a WDA settlement related to the accident that caused Cliffman's death. Under the agreement, the estate received $50,000 in settlement of a third-party liability claim with the at-fault driver's insurance company. Phillip also negotiated a $250,000 settlement with Cliffman's insurance company of the estate's under-insured motorist coverage claim. The Allegan County Probate Court approved the gross settlement amount of $300,000. From this pot, the court approved payment of $100,000 in attorney fees, and it allocated $40,000 to the probate estate for Cliffman's conscious pain and suffering, as required by statute.[5]

---

[2] Given this case's procedural posture, the facts underlying Cliffman's accident and death are sparse in the record before the Court, but the parties agree on the limited information I provide here.

[3] Phillip Carter was later replaced as the personal representative of Cliffman's estate. The change in personal representatives is not relevant to the resolution of this case.

[4] It appears that the attorney initially retained to litigate Cliffman's personal injury claims mistakenly believed Cliffman was domiciled in Ottawa County.

[5] See MCL 600.2922(6)(d) ("The court shall then enter an order distributing the proceeds to those persons designated in subsection (3) who suffered damages and *to the estate of the deceased for compensation for conscious pain and suffering, if any*, in the amount as the court or jury considers fair and equitable considering the relative damages sustained by each of the persons and the estate of the deceased.") (emphasis added); see also *Mason v Cass Co Bd of Co Road Comm'rs*, 221 Mich App 1, 6 (1997).

Because Cliffman died intestate, the portion of the settlement related to conscious pain and suffering was distributed to his heirs at law,[6] which did not include his four stepsons.[7] Each of the stepsons claimed a share in the remaining wrongful death settlement of $160,000. Appellees, Cliffman's sisters, objected to the stepsons' claims, and the trial court held, on the basis of *In re Combs Estate*,[8] that the stepsons had no right to wrongful death proceeds under the WDA.

The stepsons appealed the trial court's determination in the Court of Appeals. The Court affirmed the probate court in an unpublished per curiam opinion.[9] Pertinent to the sole issue before us, the panel reasoned:

> [T]he issue of whether a decedent's stepchildren may share in a recovery from a wrongful-death settlement, when their parent who was married to the decedent has predeceased the decedent, was unequivocally settled by this Court in *In re Combs Estate*. There, this Court considered the plain language of MCL 600.2922(3)(b) and succinctly explained that the term "spouse" refers to "a married person." As a matter of law, it is well-settled in Michigan that the death of a spouse terminates a marriage. Given that death terminates a marriage, upon one party's death, the individuals are no longer married and the surviving individual no longer has a "spouse" within the meaning of MCL 600.2922(3)(b). As a result, stepchildren are not entitled to damages under MCL 600.2922(3)(b) when their parent, who was married to the decedent, has predeceased the decedent because these children are not "children of the deceased's *spouse*."[10]

The stepsons sought leave to appeal the Court of Appeals' decision in this Court. In lieu of granting leave to appeal, this Court granted oral argument on the application to determine whether to grant leave or take other action.[11]

## II. STANDARD OF REVIEW

---

[6] The record is unclear regarding who, beyond his sisters, are Cliffman's heirs at law, eligible to recover from this portion of the proceeds. See MCL 600.2922(6)(d).

[7] Betty's other two children predeceased Cliffman.

[8] *In re Combs Estate*, 257 Mich App 622 (2003).

[9] *In re Cliffman Estate*, unpublished per curiam opinion of the Court of Appeals, issued June 9, 2015 (Docket No. 321174).

[10] *Id*. at 2 (citations omitted), quoting *Combs*, 257 Mich App at 625.

[11] *In re Cliffman Estate*, 499 Mich 874 (2016).

Issues of statutory construction are reviewed de novo.[12]  "An anchoring rule of jurisprudence, and the foremost rule of statutory construction, is that courts are to effect the intent of the Legislature."[13]  This Court also examines the statute as a whole, reading individual words and phrases in the context of the entire legislative scheme.[14]  If the language of the statute is clear and unambiguous, "we assume that the Legislature intended its plain meaning and we enforce the statute as written."[15]

## III.  ANALYSIS

The question posed by this case is whether the term "the deceased's spouse" means "the deceased's [surviving] spouse."  In *Combs*, the decision on which the panel below relied, the Court of Appeals held that "[a] 'spouse' is a married person" and that a marriage ends upon the death of either spouse.[16]  But this construction of the statute would render entire portions of MCL 600.2922(3) nugatory.  If "spouse" were to mean only a married person and marriage truly ends upon death, there would never be a "spouse" in the WDA context because a WDA claim only arises upon someone's death.  This would mean that even a living spouse could not recover; the living individual would not be a "spouse" under the WDA because the marriage ended with his or her partner's wrongful death.  Instead, the Court of Appeals implicitly read words into the statute, interpreting it to mean "[t]he children of the deceased's [surviving] spouse" or "[t]he children of the deceased's spouse [at the time of the deceased's death]."  I would not give the term "spouse" such a limited construction, as that construction is clearly contrary to the Legislature's intent.

The WDA governs actions for damages arising from injuries that result in death.  It provides that if the conduct that caused death would have entitled the decedent to maintain a cause of action for damages had he or she lived, that cause of action survives the death of the decedent and can be maintained by the decedent's estate through a duly appointed personal representative.[17]  The statute delineates specific persons who may be entitled to benefits.[18]  The issue before the Court in this case requires us to determine the meaning of the phrase "[t]he children of the deceased's spouse" in MCL 600.2922(3).  This subsection provides, in pertinent part:

---

[12] *Speicher v Columbia Twp Bd of Trustees*, 497 Mich 125, 133 (2014).

[13] *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63 (2002).

[14] *Sun Valley Foods Co v Ward*, 460 Mich 230, 237 (1999).

[15] *People v Gardner*, 482 Mich 41, 50 (2008).

[16] *Combs*, 257 Mich App at 625.

[17] See MCL 600.2922.

[18] See MCL 600.2922(3).

. . . [T]he person or persons who may be entitled to damages under this section shall be limited to any of the following who suffer damages and survive the deceased:

(a) *The deceased's spouse*, children, descendants, parents, grandparents, brothers and sisters, and, if none of these persons survive the deceased, then those persons to whom the estate of the deceased would pass under the laws of intestate succession determined as of the date of death of the deceased.

(b) *The children of the deceased's spouse.*[19]

The decedent's stepsons claim a right to WDA proceeds based on MCL 600.2922(3)(b). When the language in MCL 600.2922(3) is considered in its entirety, the subsection provides that "[t]he children of the deceased's spouse" "may be entitled to damages" if they "suffer damages and survive the deceased."[20] It is an undisputed fact that the stepsons are Betty's natural children; the parties dispute only whether Betty could be considered Cliffman's "spouse" under the WDA, and thus, whether the stepsons are "children of the deceased's spouse."

The WDA does not define "spouse." Therefore, this Court must give the undefined statutory term its plain and ordinary meaning. We may consult a dictionary to ascertain the common meaning of a word.[21] A common word or phrase is to be determined by consulting a lay dictionary,[22] while legal terms of art must be construed according to their peculiar and appropriate meaning.[23] If the definitions of a term are consistent in both lay and legal dictionaries, it is unnecessary for a Court to determine whether the term or phrase is a term of art.[24]

*The American Heritage Dictionary* (2d College ed) defines "spouse" as "[a] marriage partner; husband or wife."[25] *Black's Law Dictionary* (5th ed) defines "spouse"

---

[19] MCL 600.2922(3) (emphasis added).

[20] *Id*.

[21] *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 621 n 62 (2016), citing *Brackett v Focus Hope, Inc*, 482 Mich 269, 276 (2008).

[22] *Hecht*, 499 Mich at 621 n 62.

[23] MCL 8.3a; *Hecht*, 499 Mich at 621 n 62.

[24] *Hecht*, 499 Mich at 621 n 62.

[25] This dictionary was copyrighted in 1982, and the pertinent phrasing in MCL 600.2922(3) was modified and enacted in 1985. See 1985 PA 93, effective July 10, 1985.

as simply "[o]ne's wife or husband."[26] This definition has not changed substantially over time. A more modern dictionary copyrighted in 2014, *Merriam-Webster's Collegiate Dictionary* (11th ed), defines "spouse" as "betrothed man, groom & . . . betrothed woman, bride[.]"[27] *Black's* Fifth Edition also has a separate definition for "surviving spouse," which is "[t]he spouse who outlives the other spouse. Term commonly found in statutes dealing with probate, administration of estates and estate and inheritance taxes." Similarly, *Black's Law Dictionary* (6th ed), copyrighted in 1990, shortly after the 1985 amendment of the WDA, defines "spouse" as "[o]ne's husband or wife, and 'surviving spouse' is one of a married pair who outlive[s] the other." This suggests that the term "spouse," absent the adjective "surviving," should also include deceased persons. In short, the ordinary meaning of the term "spouse" does not have an inherent temporal definition relevant to this dispute. And, it is my conclusion that the statutory text and context indicate that "spouse" as used in the WDA is also not temporally limited.

MCL 600.2922(3)(b) is not the only provision of the WDA that uses the term "the deceased's spouse." Specifically, the Legislature refers to "the deceased's spouse" in MCL 600.2922(3)(a), when it describes another set of "persons who may be entitled" to recover WDA damages. This Court has consistently held that we must read related statutory provisions together to create a harmonious whole:

> [I]t is well established that "we may not read into the statute what is not within the Legislature's intent as derived from the language of the statute." However, it is equally well established that to discern the Legislature's intent, statutory provisions are *not* to be read in isolation; rather, context matters, and thus statutory provisions are to be read as a whole. "[A]ny attempt to segregate any portion or exclude any portion [of a statute] from consideration is almost certain to distort the legislative intent."[28]

---

(Subsequent amendments of MCL 600.2922 did not alter this language.) Thus, the *American Heritage Dictionary* is enlightening as a contemporary definition of the term chosen by our Legislature. See, e.g., *In re Certified Question from the United States Court of Appeals for the Ninth Circuit*, 499 Mich 477, 484 (2016) ("[I]t is best to consult a dictionary from the era in which the legislation was enacted."); *Cain v Waste Mgt, Inc (After Remand)*, 472 Mich 236, 247 (2005).

[26] The Fifth Edition was copyrighted in 1979, shortly before the 1985 enactment of the pertinent phrasing in MCL 600.2922(3).

[27] *Merriam-Webster's Collegiate Dictionary* (11th ed) further defines "betrothed" as "the person to whom one is betrothed" and "betroth" as "to promise to marry" or "to give in marriage."

[28] *Robinson v City of Lansing*, 486 Mich 1, 15-16 (2010) (citations omitted; second and third alterations in original).

In MCL 600.2922(3)(a), the Legislature listed a number of persons who may collect WDA proceeds—specifically including "[t]he deceased's spouse":

> *The deceased's spouse*, children, descendants, parents, grandparents, brothers and sisters, and, if none of these persons survive the deceased, then those persons to whom the estate of the deceased would pass under the laws of intestate succession determined as of the date of death of the deceased.[29]

If, as the Court of Appeals has held in this context, marriage ended upon the death of either spouse, and the term "spouse" meant only a person currently married to another living person, the portion of MCL 600.2922(3)(a) providing that "[t]he deceased's spouse" could take some portion of the WDA proceeds would be rendered nugatory. Quite simply, if spousal status were dependent on an existing marriage, the death of either party to a marriage would eliminate the existence of any spouse. There will always be a death triggering a WDA claim.[30] By expressly providing that "[t]he deceased's spouse" is eligible to recover WDA proceeds if he or she meets the other statutory requirements, it is clear that the Legislature did not intend the narrow reading of the term "[t]he deceased's spouse" used by the Court of Appeals. Therefore, I would hold that a deceased's spouse does not cease to be a spouse merely because he or she predeceased the WDA decedent. The status of "spouse" continues after death—limited to this specific context[31]—and the predeceased spouse's children are eligible to recover WDA damages. As long as the stepchildren "survive the deceased,"[32] it should not matter that their parent, i.e., "the deceased's spouse," is already dead. The children maintain the ability to recover WDA proceeds through their relationship to the deceased's spouse regardless of whether that spouse has already passed away.

---

[29] Emphasis added.

[30] MCL 600.2922(1) ("Whenever the death of a person, injuries resulting in death, or death as described in [MCL 600.2922a] shall be caused by wrongful act, neglect, or fault of another, and the act, neglect, or fault is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages, the person who or the corporation that would have been liable, if death had not ensued, shall be liable to an action for damages . . . .").

[31] The Legislature is, of course, free to apply or define the term "spouse" in a contrary fashion in other contexts. See *Kuznar v Raksha Corp*, 481 Mich 169, 176 (2008).

[32] MCL 600.2922(3)

Betty's death before Cliffman obviously precluded *her* from taking some portion of the WDA proceeds,[33] but the Legislature did not intend Betty's death to preclude *her children* from the opportunity to claim a portion of the WDA proceeds upon the death of her husband, Cliffman. For the purposes of the WDA, Betty remained Cliffman's "spouse" after her death, and her children remained eligible to share the WDA damages upon Cliffman's death.[34] Consequently, I would overrule *Combs* and its declaration that a person's spousal status under the WPA terminates when either spouse dies.

While not strictly necessary to my conclusion, my rejection of a "surviving spouse" construction of MCL 600.2922(3)(b) is also supported by the statutory history of the WDA. This Court has long held that legislative amendments are presumed to change the meaning of an existing statute.[35] The original version of MCL 600.2922 was enacted in 1961.[36] At that time, the pertinent section provided:

---

[33] *Id.* ("[T]he person or persons who may be entitled to damages under this section shall be limited to any of the following who suffer damages and *survive the deceased . . . .*") (emphasis added).

[34] While the Court of Appeals below relied in part on this Court's recent decision in *In re Certified Question from the United States Dist Court for the Western Dist of Mich*, 493 Mich 70, 79 (2012), it was error to do so. That decision is distinguishable because the pertinent statutory term at issue was "married woman," not "spouse." *Id*. at 78. Because the plaintiff was not "a married woman" at the time she "utiliz[ed] . . . assisted reproductive technology," given her husband's prior death, the resulting child could not recover from the deceased father in probate. *Id*. at 78-79. The pertinent statutory text at issue in *In re Certified Question* is not before this Court; we are concerned solely with the meaning of the phrase "children of the deceased's spouse" as used in the WDA. MCL 600.2922(3)(b). Additionally, the other cases relied on by the Court of Appeals below or in *Combs*, 257 Mich App at 625 nn 5 and 6, in coming to a conclusion contrary to my analysis, are similarly distinguishable as arising in the context of divorce proceedings, *Tiedman v Tiedman*, 400 Mich 571 (1977); *Byington v Byington*, 224 Mich App 103; 568 NW2d 141 (1997), or access to social services benefits, *Cornwell v Dep't of Social Services*, 111 Mich App 68 (1981).

[35] See, e.g., *Bush v Shabahang*, 484 Mich 156, 167 (2009) ("[C]ourts must pay particular attention to statutory amendments, because a change in statutory language is presumed to reflect either a legislative change in the meaning of the statute itself or a desire to clarify the correct interpretation of the original statute."); *Lawrence Baking Co v Unemployment Compensation Comm*, 308 Mich 198, 205 (1944) ("It may be presumed that by the 1941 amendment the legislature intended to change the meaning of the existing law.").

[36] 1961 PA 236, effective January 1, 1963.

Every such action [wrongful death lawsuit] shall be brought by, and in the names of, the personal representatives of such deceased person, and in every such action the court or jury may give such damages, as, the court or jury, shall deem fair and just, with reference to the pecuniary injury resulting from such death, to those persons who may be entitled to such damages when recovered and also damages for the reasonable medical, hospital, funeral and burial expenses for which the estate is liable and reasonable compensation for the pain and suffering, while conscious, undergone by such deceased person during the period intervening between the time of the inflicting of such injuries and his death. Such person or persons entitled to such damages shall be of that class who, by law, would be entitled to inherit the personal property of the deceased had he died intestate. The amount recovered in every such action for pecuniary injury resulting from such death shall be distributed to the *surviving spouse* and next of kin who suffered such pecuniary injury and in proportion thereto. Within 30 days after the entry of such judgment, the judge before whom such case was tried or his successor shall certify to the probate court having jurisdiction of the estate of such deceased person the amount and date of entry thereof, and shall advise the probate court by written opinion as to the amount thereof representing the total pecuniary loss suffered by the *surviving spouse* and all of the next of kin, and the proportion of such total pecuniary loss suffered by the *surviving spouse* and each of the next of kin of such deceased person, as shown by the evidence introduced upon the trial of such case. After providing for the payment of the reasonable medical, hospital, funeral and burial expenses for which the estate is liable, the probate court shall determine as provided by law the manner in which the amount representing the total pecuniary loss suffered by the *surviving spouse* and next of kin shall be distributed, and the proportionate share thereof to be distributed to the *surviving spouse* and the next of kin. The remainder of the proceeds of such judgment shall be distributed according to the intestate laws.[37]

This long and unwieldy paragraph uses the term "spouse" five times, and each use is preceded by the term "surviving." There can be no mistaking the Legislature's intent to preclude recovery by or through a predeceasing spouse in the original version of the WDA.

In 1985, the Legislature undertook extensive efforts to reorganize the WDA. In that amendment, the Legislature mercifully broke the statute down into multiple subsections and, significantly to this case, deleted any mention of the term "surviving

---

[37] MCL 600.2922(2), as enacted by 1961 PA 236 (emphasis added).

spouse," replacing it with simply "spouse."[38] I cannot presume this amendment to have been perfunctory, and the removal of "surviving" must make the term "spouse" distinct from "surviving spouse." Therefore, the 1985 amendment bolsters my textual conclusion that the children of a predeceased spouse can recover WDA proceeds.[39]

While I would hold that the stepsons—as "children of the deceased's spouse"[40]—are among the classes of people who *may* recover WDA proceeds resulting from Cliffman's death, whether they have a *right* to a portion of the settlement remains undetermined. The WDA limits "the person or persons who may be entitled to damages under this section" to individuals "who suffer damages and survive the deceased."[41] Therefore, under my preferred construction of the statutory text, it would

---

[38] MCL 600.2922, as amended by 1985 PA 93, effective July 10, 1985.

[39] The intent of the amendment is made clear by reviewing the text of the original version of the WDA. One sentence of the prior version provided: "The amount recovered in every such action for pecuniary injury resulting from such death shall be distributed to the *surviving spouse* and next of kin who suffered such pecuniary injury and in proportion thereto." MCL 600.2922(2), as enacted by 1961 PA 236 (emphasis added). Another sentence noted that, "[a]fter providing for the payment of the reasonable medical, hospital, funeral and burial expenses for which the estate is liable, the probate court shall determine as provided by law the manner in which the amount representing the total pecuniary loss suffered by the *surviving spouse* and next of kin shall be distributed, and the proportionate share thereof to be distributed to the *surviving spouse* and the next of kin." *Id.* (emphasis added). These particular sentences were aimed at exactly what is at issue before this Court: to whom WDA proceeds can be awarded. Under the 1961 version of the WDA, a predeceasing spouse, and thus her children, were excluded.

[40] MCL 600.2922(3)(b).

[41] MCL 600.2922(3).

remain incumbent on the stepsons in remand proceedings to prove that they have suffered damages as a result of Cliffman's death.

## IV.  CONCLUSION

Interpreting the plain meaning of "children of the deceased's spouse" in MCL 600.2922(3)(b) in the context of the rest of the WDA, I would conclude that the stepsons are eligible to recover WDA proceeds despite the fact that their mother, the "deceased's spouse," predeceased the decedent in this case.  The WDA clearly envisions that a "spouse" may predecease the decedent involved in the WDA action, but still allows that spouse's children to recover damages under the WDA.  For these reasons, I would reverse the Court of Appeals' and trial court's determinations to the contrary, and remand for further proceedings.

MARKMAN, C.J., and VIVIANO, J., join the statement of YOUNG, J.

BERNSTEIN, J., not participating.



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

April 17, 2017



t0413

Clerk